Good morning. May it please the Court, my name is David Schlesinger. I represent Petitioner Lali Gabelaya and these two consolidated petitions for review. Ms. Gabelaya, of course, has raised several issues in her two petitions, but at least in my estimation, I think it can be best categorized in three different ways. I'd like to address each in order. The first category of issues relates to her motion to reopen based on changed country conditions in her native country of Belarus. Within that category, I think the BIA made its most serious error, which was adjudicating her motion to reopen based on a 1992 BIA present opinion, present decision, a matter of quello, that neither the BIA, at least when you look at the progression of its case law, matter of quello G in 1996, excuse me, and matter of S.V. in 2000, standard that this Court ultimately adopted in Ordonez, V.I.N.S. in 2003 and has applied consistently since then. Matter of S.V. in Ordonez require only that a petitioner or movement show that there is a reasonable possibility of success if the case were to be reopened and that it would merely, if anything, that it's just a need to make a prima facie showing and that it would merely be worthwhile for the case to be reopened. On page A.R. 3 of the second administrative record, the final paragraph shows very heavy reliance on matter of quello, which would suggest that the entire adjudication was in error, simply did not apply, Ordonez simply did not apply matter of S.V. And so I think at a bare minimum, what should occur here under this first category that I'm discussing is that this Court should remand to the BIA at a bare minimum to adjudicate her motion reopened based on changed country conditions under the correct legal standard. Now the second category, should the Court decide not to remand based on matter of S.V. in Ordonez, is her motion to reopen based on matter of Lozada, the ineffective assistance of counsel that her second immigration counsel, Nur Chamas, rendered from 2014 on. She was retained by the BIA after the government accused Ms. Gabile of having made a frivolous asylum filing. Mr. Chamas did not aggressively litigate the possible theories of withholding of removal and torture convention relief, CAT, for Ms. Gabile. And so at a bare minimum, given that she asserted a new theory of relief, which was that she had sustained serious domestic violence by her boyfriend in Belarus, Mr. Alexandrov, who... This was the theory after it was determined that her testimony that her family had been killed was made up. Your Honor is correct that it is a theory that is articulated once she decided to, in essence, come clean. So she had falsely testified that her family was murdered and then after that was determined to have been the product of fraud over many cases, she came in with the domestic violence allegation. And so how exactly was her second counsel ineffective with regard to bringing that forward? He didn't fully investigate the underlying facts of her case, Your Honor. And he should have gone... Our theory is that he should have gone beyond simply trying to address the evidence that the government had proffered to demonstrate that Ms. Gabile had made a petition filing, an asylum application filing. So he didn't do the necessary investigation of the client's circumstances, of his client's circumstances, as he should have, which my firm has done since. And it's illustrated in the motion to reopen and her declaration, including what we deem to be a contrite recognition that she'd made serious errors during the first phase of the process. The serious error being lying about her family being murdered? I wouldn't exactly use the word lying, Your Honor, because I have a duty of loyalty. She testified her family was killed. Quote, I'm afraid to go back to Belarus because I'm afraid I will be killed there. All my family was killed. That's what she testified to, yes? And that was... How do you characterize that when her family wasn't killed? How is that anything other than a lie? But she's acknowledged that that was false testimony on her first, Your Honor. Second, I would note that for purposes of evaluating a motion to reopen this court under cases like Berstein v. Gonzalez and Malti v. Ashcroft, it's required to accept the allegations as true unless they're inherently unbelievable. Now, I... Wait a minute. I didn't hear an answer to Judge Bennett's question. It was a flat-out blatant, huge lie, was it not? I think using her own language, Your Honor... Can you answer my question, yes or no? It was a significant material falsehood, Your Honor, yes. We're not in any way trying to skirt around that. Again, I have to be careful because I have a duty of loyalty to my client, so I don't want to use any language that would suggest that I'm in any way casting aspersions on her. I guess I don't understand then on the ineffective assistance theory, at least, because this lawyer that you're charging with ineffective assistance is the one who came in to try to basically defend her against these charges that she had, in fact, made this whole story up, right? That's correct, Your Honor. So I guess I'm not clear on how could that lawyer have rendered ineffective assistance by... I mean, I assume he did whatever he could to try to blunt the force of pretty fact that your client did lie. I just don't see... How is she in a position now to blame him for having done something wrong when she's the one who got herself in this mess? Well, we acknowledge that he did attempt to defend her against a frivolous asylum determination, Your Honor, but he also did not directly appeal her denial of withholding removal and cat claims to the BIA. Second, at least our view of what... And I think what this court, given its caseload, would deem competent immigration representation to fully delve into a client's background and to assess all possible theories. Do you think that if the lawyer had, I guess, done this more thorough interview of her and elicited the information that I gathered that you have now, and he had told her, listen, we need to abandon ship on this crazy theory that you put forward that's now been shown to be a lie, let's have you testify instead to all these other things and hope to God that the IJA somehow will believe you? And what possible likelihood of success could that have had in light of what she had already done? Well, first, Your Honor, as occurs in federal courtrooms all over the country on a daily basis, there are witnesses, including ones that the government proffers in criminal cases who acknowledge that they have, during early stages of proceeding, including proffer sessions, made false statements. And they attempt to rehabilitate themselves in the eyes of the government. So it is possible that she could have done what you suggested, Your Honor, and had a fact finder, in this case, the IJA creditor. Second point I'd like to make is that because these are non-discretionary forms of relief that Ms. Gaboulae is seeking, withholding and removal and torture convention relief, there is an objective component to it. And that is the country condition's evidence has to be evaluated independently of the petitioner's credibility. Bromfield v. Mukasey holds as such in withholding and removal context. Camalthus v. INS holds as such in the torture convention context. So because of that objective component, that gave, in our view, Mr. Chalmers a heightened duty to do a more fulsome investigation and presentation than he did. Remaining time before rebuttal, I'd like to briefly address the third category, the proverbial elephant in the room, the frivolous asylum determination. We acknowledge that Ms. Gaboulae in her declaration supporting her motion to reopen made significant concessions about the falsehoods that she had made. And we acknowledge that there would be grave difficulty in trying to undo that if this case were to somehow go back to the BIA or later to the Immigration Court. Incidentally, Your Honors, it would be a new Immigration Judge assessing this if it does get to the Immigration Court level because I.J. Ipema, who adjudicated this case definitively in 2015, has since retired from the bench. So there would be a fresh perspective brought to it from the bench. But we do not think that the issue is dead and buried, so to speak, from a jurisprudential standpoint because given the separation of powers principles that cases like Gonzales v. Thomas and Ines v. Ventura and SCC v. Chenery, all of which are Supreme Court cases regarding the limited scope of authority that this Court has to conduct its review of agency orders, we think ultimately it has to be the agency, the BIA, that makes the final determination. And as we articulated in our first opening brief, there were serious errors made by the I.J. and the BIA. But what you're challenging are evidentiary rulings that I guess from your client's standpoint go to the reliability of the evidence that the government brought forward. And now that she's basically acknowledged that actually it was all, everything they were trying to prove is true. I just don't see, how would we undo, why would we undo that finding now? That makes no sense to me. I acknowledge there's a certain bit of what I would call procedural pedantism involved in this argument, Your Honor, but I do think that the separation of powers principles are important, that it ultimately should be the agency if this Court finds that there were evidentiary infirmities during the first phase. Although, I mean, even getting to that point, didn't the Petitioner's counsel concede that the affidavit was admissible, didn't object to the facts, and also even if there was some error in that, the interpreter's conviction documents were later admitted, and I don't think there can be an argument that they shouldn't have been. I think that there, I acknowledge what Your Honor said. I think there is a distinction though between actually admitting it into the record and considering it to be probative in any way. This Court is, in cases like Espinoza v. INS, is focused on whether the evidence is probative first and whether, second, it was fundamentally unfair for the Petitioner to have to defend against the unfirm evidence of that sort, defective evidence of that sort. The indictment, federal grand jury indictment, clearly falls in that category because those are merely allegations. Manifold's declaration was uncross-examined. And Special Agent Van Wies' letter essentially summarizing the findings of this investigation were also not cross-examined. He was not allowed to testify by DHS. So, I do see that my time is rapidly diminishing. If there are no further questions, I'd like to reserve the remainder for rebuttal. Okay. Let's hear from the government and then we'll have a chance to respond. Ms. Gambalaia fully admits that she filed a frivolous asylum application. I think the entire first petition for review is moot at this point. The only issue before the Court is whether the Board abused its discretion in denying reopening. And none of the points raised by the Petitioner in their opening brief have any merit to them. First of all, with respect to the standard of review, as we point out in our brief, the standard of review language that the Board used is essentially identical to a matter of SV and the cases that the Petitioner is making, making a distinction without a difference. Secondly, with respect to the evidence presented, the Petitioner didn't show prima facie eligibility for any relief. So, Counsel, I'm going to get right to the issue that I have some concerns about. The Petitioner's declaration stated that her ex-boyfriend had beaten, raped, and threatened to kill her throughout their six-year relationship. Why doesn't this allegation qualify as persecution in a way that would justify or perhaps even require reopening? Here's why. Having filed a frivolous asylum application, she's no longer eligible for asylum ever. All she's eligible for is withholding of removal. Withholding of removal requires a showing of a clear probability of future persecution. She would have to show that she would be targeted again by the ex-boyfriend? Right. In order for her to prevail, as a matter of fact, she'd have to point this Court to compelling evidence that she has a clear probability of future persecution or torture in order for this Court to determine that the Board abused its discretion in denying reopening. And she can't show that. Does the Court have any further questions? We think that the Board's decision denying reopening was not an abuse of discretion. The first petition for review was essentially mooted by her declaration that she made with her motion to reopen. And if the Court has no further questions, we'd ask the Court to deny both petitions for review. Thank you, Counsel. I'm not sure you have much to try to rebut, but you have some time left. Let me say something, Your Honor. What I would note in response to Mr. Fiorino's argument regarding what I'd call the Alexandra Theory, it's not simply the past persecution itself, which, as alleged, is quite serious. What's also serious, as the record illustrates and her declaration illustrates, is that Mr. Alexandrov has significant ties to the Belarusian KGB. Unlike Russia, Belarus has not renamed its internal security services. And it also ties to law enforcement in their hometown, Brest, Belarus. And he had threatened, because he was aware of her political activism or support for the youth group, Zuber, that opposed President Alexander Lukashenko, he had threatened to turn her in to law enforcement authorities. So there's also a political opinion component of her theory regarding Alexandra. It's political opinion, gender-based persecution, which this Court in Prodomo v. Holder has held in a country with grave problems of domestic violence, like Belarus has, could entitle women to be classified as a particular social group. So our position is that she did make a prima facie showing, even if this Court accepts Mr. Fiorino's argument and deems the BIA to have properly adjudicated the motion under a matter of espionage. If there are no further questions, I'd be pleased to submit it.
judges: Watford, Rakoff, Bennett